Good morning, Your Honors. Vince Branco, Federal Defenders, on behalf of Mr. Gonzalez. Reversal in this case is required under Navarro-Garcia because the district court failed to conduct a hearing regarding whether the jury improperly considered extrinsic evidence during deliberations. Further, Mr. Gonzalez's sentence must be reversed as procedurally unreasonable because the district court failed to explain why it was rejecting Mr. Gonzalez's non-frivolous request for a lower sentence. As to the extrinsic evidence issue, a comparison of Navarro-Garcia to this case shows that the district court erred by not conducting an evidentiary hearing. I think the first step is to go directly to the juror's declaration, which is Exeter Record 89. It specifically states, while jury deliberations occurred, another jury informed the jury about how cellular phones operate. Specifically, that juror informed the jury that the name of the phone could be charged, changed by the user of the phone at any time. Kagan. Is that a pretty common knowledge about people who have cell phones, that you can put a name on it and you can take it off? Gonzalez-Valdez To be honest, I didn't know you could put a name on it. I wouldn't know how to do it on my phone. Kagan. Well, let me change what I say. I'm not sure I knew you could put a name on it, either. But if you could put a name on it, I would assume you could take it off. I mean, the name doesn't put on there by God or by the manufacturer. So however it got there, it could be changed. Gonzalez-Valdez Well, yes. But, I mean, that's one of the things, is we don't know how it's done. Is there evident? Is there a way to track who can change it? Is it changed through the service provider or just on the individual phone? It brings in a lot to the case that we just ---- Kagan. Well, I would presume I could put a name on it, too, if I wanted to. Gonzalez-Valdez Well, that's the thing. I don't think everyone ---- you're saying presumably I could. We don't know. And we don't know whether or not this actual phone that was at issue in the trial ---- Kagan. And what difference does it make anyway? I mean, so if it was somebody else's phone, it doesn't really matter. The point was, it was the phone he had with him when he was stumped. Whatever his phone it was. Gonzalez-Valdez Well, one of the major issues is, was it his phone? Kagan. No, it isn't. Gonzalez-Valdez Or did he just find it was? Kagan. No, it wasn't whether it was his phone. It was whether it was the phone that he had with him that he was using when he was driving. Gonzalez-Valdez Well, yeah. But his explanation at trial was, this phone was just in the glove compartment. And when I opened to get the registration out, it fell on the ground and I picked it up at the inspection area. And that's how it got in my hand. Whether or not this phone was meant for him or his use is relevant to his knowledge. And the fact that the phone does have someone else's name in it is evidence that it's not his phone. It's consistent with what he says. This is not my phone. I haven't seen it before. The name Michelle on it shows that it's not mine. I mean, in the government's closing argument, they characterized this phone evidence as devastating evidence and specifically made arguments to the jury such as, we would expect that the phone's not going to have identifying information on it. So they're arguing this theory and then a juror comes in and explains to other jurors, well, you can change the information. And I think it's significant that this juror made a declaration saying, yes, this happened. This was significant. The Gibson case, this court specifically said, the fact that a subject matter is brought up is evidence that it was important to their decision. So does it fail into insignificance in light of the other evidence in the case, how much marijuana there was in the car, and some of the other things that he said? Well, I wouldn't consider this case, I guess what you'd normally say, overwhelming evidence. The jury clearly took a considerable amount of time deliberating over this. I get to remember that this case, the jury selection and all evidence and instructing, pre-instructing the jury all took place in one day. What would you want the evidence you're hearing to be about? To be about exactly what was said. For example, when this was --- All right. What was said was some jurors said that you can fix the phone. So then what? We don't know that. So what else do you want to know? Well, I want to know when it was introduced into the juror deliberations. How much did the jurors discuss the information? To go over all the factors identified in Navarro-Garcia, which says this court should be considered in determining whether or not there's a prejudicial effect. Here you don't have that because the district court --- In Navarro-Garcia, what you had was essentially an experiment, right? They went ahead and did something that was not in evidence, not just somebody said something they knew, but went and did a whole production. Well, there's two things in Navarro-Garcia. One, there's one juror that went out and put 300 pounds of material in the back of her car and drove it to see if it changed the way it drove. The second part, and this is the critical part to this case, is the juror foreman in that case, and I'm quoting from Navarro-Garcia, he had discussed with the jury the fact that when his children sit in the backseat of his car, the bottom scrapes his driveway, although normally it does not. He speculated to the jury that if the added weight were situated in the trunk rather than the backseat, the effect would be even more pronounced. This Court held regarding that evidence. It is unclear from the record whether the jury foreperson's experience regarding his car scraping of his driveway while his children were in the backseat was a one-time occurrence over Labor Day weekend, which was during the deliberations, and possibly an experiment or regular event. The Court held. This, too, needs to be addressed at the evidentiary hearing. And that's the same situation here. We have a statement that a jury, a juror, talked about how cellular phones operate, but we don't know. Kagan. This case was all tried in one day, right? Yeah. And the deliberations were the same day? No. All tried in one day, pre-instructing, pre-instructed. The jury comes back in the morning. There's closing arguments. They deliberate from, I think it's like 1030 or, yeah, 1030-something to 1215. The jury asks for a break for lunch. The judge says you can go to lunch for an hour. The judge also specifically says you can take your cell phones with you while you go to lunch. They come back at 115 and then they deliberate, I believe, until 215 before they reach, or I think it's even further than that, maybe 315 before they reach a decision. Meaning even though most of the evidence was presented in this case in the afternoon, it took the juries about three and a half hours to decide the case. I think one of the things that's significant about this is the effect it did have on this juror. I know we can't talk about the big elephant in the room that this juror actually said that this is what changed her decision, but I think you can look at the circumstantial evidence from her declaration, and that is just five days after the trial, she was concerned enough about what happened that she unsolicited contacted the Federal Defender's Office. No one had talked to her. She had to find the phone number and contact the attorney involved to let them know about this evidence, this particular problem, about another juror telling her about how cell phones operate. I think all that shows that this was a very important issue to the jurors without even looking at her other comments because she wouldn't have done these actions unless they're important. And you want to talk about another issue? You're over your time already, so. I believe this is a 20-minute argument. Oh, it's a 20-minute argument? Sorry. But I'll move on to even if the conviction is. Let me just ask one more question about this. Yes. Was the argument made anywhere that the fact that the defense argued that because it said to Michelle it wasn't his? Yes. I believe it's that there was closing argument that this phone wasn't his. Because it said it had the name Michelle on it? I'm not sure the name Michelle was mentioned or not. Was it ever an issue in the trials when I'm asking you? Yes. The name, not whether it was his phone, but the name on the phone. Yes. The prosecution introduced both the cellular phone, and I believe since it wasn't working anymore, they introduced the picture with the name Michelle on it. And that's not what I'm asking you. I'm asking you was did either side make anything of the fact that the phone had the name Michelle on it? Well, yes, because the government in their closing argument said this wouldn't have any identifying information on it in their closing, meaning that it would be that the actual smugglers are going to distance themselves from this phone, including presumably Mr. Gonzales, if he is indeed involved, and that the phone would have a different name on it rather than someone involved. So they accounted for the fact that it had the name. Yes. But the defense team is saying because it has Michelle on it, that shows it's not his phone. I'm not sure of that. But I think what's important, again, is what the jurors felt about it. And if the jurors felt the need, and this is under Gibson, the juror felt the need to bring this up, that shows it had significance in this case. Finally, I'd like to talk about assuming the court disagrees on the actual conviction, that this sentence was unreasonable because when a party raises a non-frivolous argument tied to the 3553A factors, the court must explain why he accepts or rejects the party's position. Here Mr. Gonzales clearly argued in his filings before the sentencing and argued during the colloquy of sentencing that because he is young, that he has job skills, that he cared for his father who has diabetes, and that he's lived here since his youth but now will be deported, was a reason to go below the actual guideline range, or even at the low end of the guideline range, were never even mentioned by the district court. He simply did not make any reference, even acknowledging the mitigating factors, nor explaining why he chose to dismiss the mitigating factors in favor of the sentencing post. This would be air under the, clearly air in the Sixth Circuit under Peters and Thomas, and I think this is consistent with this court's case law, particularly in Cardi. They acknowledge that the district court, when faced with a non-frivolous argument, you must make some findings or in some way explain your sentence, and here there's no explanation whatsoever. Now, the government may rely on Rita and Cardi, but in all those cases there's something where the district court specifically acknowledges the argument, meaning in Rita, the district court had summarized the defendant's argument, meaning the summary of what mitigating factors they were relying on. In Cardi, the judge specifically acknowledges the strong family support. Here, there is nothing about the mitigating factors, and that simply is not an adequate explanation of a sentence. I will save my remaining time for rebuttal. Good morning. May it please the court, Christina McCall of the United States. Her menace, Gonzalez Valdez, was properly convicted of smuggling 86 pounds of marijuana from the United States and possessing that marijuana with intent to distribute it. He was properly sentenced by the district judge, who correctly calculated the sentencing guidelines and sentenced within them. I'll start with the analysis of the juror declaration. First, as a matter of policy, this court should not reward defense counsel, not Mr. Bronkow but his predecessor, for submitting a declaration that flaunts Rule 606. It doesn't really matter. We're just disregarding that. But what about what she did say that is admissible? I'm sorry? What about what she did say that is admissible? The portion that the juror stated that was admissible, essentially that a fellow juror had explained to the rest of the jurors that a user could change the name on a cell phone, was sufficient on its face for the district court to deny the motion for a new trial without a hearing. The district court made specific findings that this could not have materially affected the outcome, the verdict, essentially, in this case. As Your Honor stated previously, this would be analogous to a juror sharing information that a photo on someone's cellular phone could be changed by the user at any time. It's not extrinsic evidence. This ---- Well, it could or couldn't be. Isn't that the problem? I mean, we don't quite know whether this woman just knew this or went home overnight and tried it out on her phone. Does that matter? According to the face of the declaration, there's no indication that the fellow juror mentioned any sort of out-of-court experiment. In fact, the juror just said that the name on a phone could be changed by any user at any time. If those facts had been developed in the declaration or if they had existed, they would have been placed in the declaration. But she knew. She might not know how this woman knew it. She might not have any idea how this woman knew whatever she knew. Well, the foreperson would have stated in her declaration, if that had been the case, that the fellow juror had conducted an out-of-court experiment and came back ---- If she knew that. If she knew that. But she might not have known that. The fellow juror might have just come in and said, you know, you can change this at any time, any place, any time, but not told how she knew that. Now, I gather that the law, which is a little odd in this way, would take a different view if the juror simply knew this or if she had gone home to fiddle around with her phone to find out whether it would work or not. The scenario that Your Honor presents would be more of an out-of-court experiment. But on the facts before this Court in this case, we don't have any information about any out-of-court experiments. So if the fellow juror had gone home at night and tested this out on a similar phone or claimed some sort of expertise, we would be in a different situation. We would be in a situation more like Navarro-Garcia, where over the long weekend after deliberations had begun, one juror went and specifically placed 300 pounds into the trunk of the car to see how that might affect the performance of that car. But here, we don't have extrinsic evidence, first of all, because the cellular phone itself was properly admitted as a physical evidence, as an exhibit, during the trial. And I believe it was the defense counsel who submitted the screenshot with the name Michelle as an exhibit. Is it common knowledge among users of cell phones that the name can be changed? I would submit that it is, Your Honor. Does it have to be common knowledge? No. It has to be within the purview of this juror's particular experience. And unlike a case where a juror would go out and try to reconstruct a shooting at some firing range with a relative's borrowed weapon, this is just sharing of this juror's particular knowledge and experience. And I believe, as this Court stated in the Grotemeyer case, very juror experience is a virtue that assists juries in ascertaining the truth. And one great advantage of jurors over judges is their diversity of experiences. Well, does it have to always have to be that it's based on an experiment, or does it matter if it's no evidence on the subject, and the judge was very clear that he didn't want to allow evidence about how a phone works. And then a juror comes in and provides evidence, not just simply interpreting evidence that's already in, but providing the actual evidence. Isn't that enough whether it's an experiment or not? No, Your Honor. In this case, it was not providing additional evidence. It was merely explaining an item of evidence that had been properly introduced in that juror's own personal experience. Well, for example, here the district judge didn't allow any evidence that the way the phones work, the telephone, only records the last phone call by if there's a series of phone calls from the same number. And he didn't allow that testimony. Now, suppose a juror had come in, and this is common knowledge, I think, more obviously to me than this other thing, that that's the way cell phones work, that if you have a bunch of phone calls from the same person, the received calls will only show the last one. Suppose that a juror had said that in the courtroom, even though that was specifically not allowed to be testified to. What about that? Well, the district court in this case disallowed that particular testimony from the case agent based upon a lack of foundation. All right. However, the jury can still apply its common knowledge and experience. And, in fact, the instructions on reasonable doubt specifically tell the jurors you are to use your reason and common sense. And frequently, judges instruct the jurors that, you know, they are basically the deciders of fact, and they're not to leave their everyday experience at the door. The whole beauty of our jury system is that we have 12 people taken from the community who share a variety of different experiences and backgrounds, and some of them have knowledge that can be brought to bear upon the factual dispute at issue. That's it. I gather it does matter under the case law whether this is harmless error or not. I mean, suppose we thought this was a constitutional error, or could be, and therefore there should be an evidentiary hearing. But for the harmlessness question, is this subject to harmless error, juror misconduct of this kind? Well, basically, under Rule 30 ---- If it was a word, juror misconduct. There's an abuse of discretion standard, essentially, that would be applied here. And we would argue, of course, that the district judge did not abuse his discretion in denying the motion for a new trial based upon this jury declaration. Because he thought that it was harmless anyway? Yes. The district court, I believe on page 66 of the excerpt of record, found that this was not material. The findings there at the conclusion of this hearing were that this was a sharing of the juror's past personal experience. It was not extrinsic evidence. However, the Court went on and said, even if this Court accepted the defendant's connection between the knowledge that a phone screen's name could be changed by any user, and the conclusion that defendant was guilty of importing marijuana. And the district court ---- And yet the government emphasized that in summation, did it not? Well, that's an interesting point, yes. My co-counsel did say this is devastating evidence. And I agree with him on that point. But what is devastating evidence? The conversation that took place. Not the phone itself or the name on it. The contents of that conversation. In what context was it said to be devastating evidence? How was it put in the summation? Essentially, that this phone conversation that was intercepted by the agent, where the agent pretended to be Mr. Gonzales, further corroborated the evidence against him. So the timing of it, first of all ---- Well, what I'm getting at was, was the statement made that the name, the difference in the name was devastating evidence? No. Oh, just the telephone conversation. The conversation. Well, the name cut against the government, if it cut anyway. The name could, but we would argue it's immaterial or irrelevant. No matter whose name was on that screen, clearly the person who was calling expected Mr. Gonzales and his vehicle to be in a certain prearranged place at a prearranged time. Well, it's not obvious, because he didn't use his name. No. But interestingly enough, if the screen name was Michelle, and if this phone truly belonged to someone named Michelle, a male agent answered it and proceeded to have a conversation. And the person on the other end didn't say, well, your voice really changed. Where is Michelle? Nothing like that took place. Although he obviously didn't know this person very well, because he didn't recognize that it wasn't his voice. Or his Spanish. That's, yes, absolutely a plausible explanation that perhaps the unloader wasn't necessarily the person with whom Mr. Gonzales was arranging down in Mexico. We're not really sure about that. What about the sentencing? This does seem on the far end of noncommunicativeness with regard to issues that were raised. And, I mean, isn't our case law at this point essentially that procedurally speaking that if issues are raised, they ought to be responded to in some fashion? I agree that the Sixth Circuit has so helped. I'm not talking about the Sixth Circuit. I'm talking about a fair reading of a combination of our cases and the Supreme Court's cases. Well, after the most recent Supreme Court cases, essentially what the district sentencing judge needs to do is to first start with a correct and accurate calculation of the guidelines range. I think there's no dispute here that the district judge properly calculated the guidelines range. Then the district court is to move on and consider the rest of the 3553A factors. But isn't there a specific recognition, maybe it's in Cardi, I can't remember exactly where, that if particular issues are raised, they should be dealt with? That would be the ideal practice would be. All right. I'm not asking that. I'm asking whether there isn't language in the cases saying that that's so. Certainly in the Sixth Circuit cases. But we have other cases, including from the Supreme Court, stating that this review of the sentence should be for reasonableness to determine, first of all, if it was correct. Well, there are also procedural errors, even if the sentence. I mean, there are two ways you can attack a sentence. One is that it's not reasonable. And the other way is that there are procedural errors in the sentence. I mean, a judge could come in and say 36 months, and that could be a reasonable sentence. But if he didn't give the defendant an opportunity to speak or his lawyer an opportunity to explain why it should be lower, that would be an error, even though the sentence might be reasonable. And I agree with that. And I myself have filed motions for summary reversal, for instance, when the district judge didn't allow the defendant to allocute at sentencing. Well, this is a different situation. Exactly. Now, there has to be given reasons. The Supreme Court, the rules say you have to have some statement by the judge as to his reasons for the sentence. Is that right?  And we do have that. This judge referred to the seriousness of the offense, the need to respect the law, just punishment. He mentioned he wasn't going to give any enhancement. These are all reasons that were given. And so he addressed the reasons. And I would assume that that would exclude any, not consideration, but any that he would not accept the reasons given for a lesser sentence. Isn't that implicit in his sentence?  And, in fact, at one point, the district judge said the recommended sentence for Mr. Gonzales of 12 months and a day would not satisfy the 3553A factors. But the question is, there are two things. One, you have to give your reasons. But, two, under our law, my impression is that you have to respond to the arguments that the defendant presents. To the, yes, to the non-frivolous arguments. And the district court had a number of things before it when it was sentencing here. It had a lengthy sentencing memorandum filed by Miss Morgan Defense Counsel. In fact, it continued the sentencing hearing for a significant period of time in order to allow her to fully develop her sentencing memorandum. It had a lengthy and detailed pre-sentence report, which Your Honors have in front of you. Did she say anything at all that indicated by way of summary or even the or anything else that she took into account in responding to the particular arguments that were made for mitigation? And anything at all? He, she said he, not she. Yes. The district court did not specifically voice any response to Miss Morgan's argument that this defendant would be deported following his incarceration after a conviction for an aggravated felony. In our district, that argument could be made for a wide number of defendants, because most of the convictions that we deal with are actually for aggravated felonies, such as alien smuggling, drug smuggling, or someone who's been previously deported and unlawfully returns to the United States. So it wasn't a novel argument. I think the district court correctly focused on the nature and characteristics of Mr. Gonzalez-Valdez, of course, the nature and characteristics of this particular offense. And the same district court presided over this case from the moment that it was indicted, all through the motion stages, through the entire trial, and had the opportunity to witness and listen to Mr. Gonzalez-Valdez as he testified. The recommendation for a year and a day, I assume, was based on these other factors that were presented by the defendant. Is that right? That's correct, Your Honor. And in rejecting that, I agree with you that he, the district judge, implicitly rejected Mr. Gonzalez-Valdez's arguments in mitigation. Well, that's the question, whether in light of our statements in Cordy and our citations as readers, whether it's enough to implicitly reject or whether you're supposed to respond to non-frivolous arguments. Well, essentially, the bottom line is, is there a sufficient record from the district court upon which appellate courts can review the sentence? I would submit that given the totality of all the information provided here, the voluminous excerpt of record, the lengthy pre-sentence report, the arguments of both counsel made at the sentencing hearing, mine which were omitted, as well as Ms. Morgan's, which were included in their entirety in the excerpt of record, and the district court's ability to preside over this trial and witness Mr. Gonzalez-Valdez and learn so much about him through the pre-sentence report, all of these things are in the record before Your Honors. And these form the sufficient basis for this court to conduct a review of whether or not the sentence was both procedurally and substantively reasonable. Well, we say, for instance, in Cordy, which was our major case, that if a specific non-frivolous argument tethered to a relevant 3553A factor is advanced by either the defendant or the prosecution, then the judge should normally explain why he accepts or rejects the party's position. Now, that doesn't sound to me like an implicit rejection by giving other reasons and not dealing with that specific non-frivolous argument. And, of course, that decision in Zavala and Cordy does say, should. Yeah. In this case, the sentencing hearing lasted approximately 30 minutes. It had already been continued. The district court adequately considered all of the points raised by Ms. Morgan, although, admittedly, would have made a better record if he had explained. They talk about his role as his father's caretaker, his lack of a criminal history, his ineligibility for prison rehabilitation programs. You mentioned one thing, the severity of his deportation. I mean, they gave five or six specific arguments, and I just don't see anything that is a discussion of any of those arguments. I mean, the only answer could be they're frivolous. But if they're non-frivolous, it seems to me the district judge is supposed to say, you know, I understand your arguments. Here is why I'm rejecting them. Well, I don't think this rises to the level of needing to remand for resentencing. These points were raised. It wasn't like the district judge cut off Ms. Morgan, didn't allow her to make statements. No, it's not like that. It's as if she did make specific arguments, and the district court is supposed to respond to them and send non-frivolous. Well, the district court clearly found other ---- Under your theory, you know, this wouldn't mean anything that you're supposed to respond to arguments because you only win if you don't let them make the arguments. Essentially ---- I mean, these seem like kind of pointless requirements. But we all know that when somebody has to articulate and speak about something, it makes them think about it more than simply thinking about it in their own mind but not presenting their position. And this is why we write opinions, and it's why there's a different ---- I think it's very important that the court even in memorandum dispositions explain itself because if you can't, often you find out when you try to explain yourself that you can't explain yourself. And that seems to me to be what is underlying the Rita Hardy notion of procedural requirements. We're not trying to make people jump through silly hoops. We're trying to say that there needs to be articulation. Also, we can't review something that isn't there. And in this instance, it isn't there. Right. And I would submit that the district court did find other factors more compelling. It would have been nicer on appeal if the district court had addressed every single one of Ms. Morgan's points and repudiated them. But we do have what the district court considers significant, and we do have voluminous records from which to consider whether this was procedurally and substantively reasonable. Thank you. I see my time's up. Thank you, Karen. And I just want to ask you one question before you get started. You made no argument with respect to what's the first issue in your brief. Should we assume you were dropping that argument? No. We're just submitting on it. I think these are the two major issues to deal with. I think the briefs speak for themselves. I think the main problem with the co-conspirator statements is, I think Judge Berzon mentioned it earlier, that the person didn't even know that it wasn't Mr. Gonzales on the other line, meaning there's no evidence connecting the caller to Mr. Yeah, but my problem is I don't understand why it's hearsay. And I assume that's why you weren't arguing. I don't even think they're hearsay. Then I'll submit, Your Honor, and address the points that we have been talking about. On the sentencing issue, would it be sufficient, in your mind, if the district judge had said, I've considered these arguments that you have made and reject them. My sentence is based on, and he went on to say, the seriousness and so forth that he did say. Would that be sufficient? I believe under the Sixth Circuit, then, I think it's the Why do you keep saying the Sixth Circuit? Carty has the standard language which says that if you make non-frivolous arguments, there's supposed to be a response. So why do you keep relying on the Sixth Circuit? It's an unbanked case in addition to being from the circuit. It's an unbanked decision, which, believe me, we spent a lot of time on. And we waited for it for a long time to get the Supreme Court decisions. And then we got what may have been a unanimous decision in an unbanked opinion. I could answer my question, then, in light of Carty. In light of Carty? No. Just the mention of considered without acknowledging what those arguments were and explaining them. I've considered all your arguments, and he goes through all your arguments, and he said, I've considered each one of those and reject them as a ground for giving a year and a day. Here are my reasons for giving you the sentence I'm giving you. That's not sufficient in your mind? I think in – based on Carty on a within-guideline range, if the judge would have acknowledged the basis of the arguments as the district court did in Carty, then that would be sufficient. But the problem here is there's no acknowledgment of, I understand your arguments based on your youth, the fact that you're going to be deported, the fact that you have to care for your father. There's no acknowledgment in the record whatsoever that he ever even considered that he weighed those reasons. Well, we're presuming that the judge did not consider those items. Is that what we're doing? No. I'm just saying he needs to offer something that shows he can – explaining why. Well, we have, for example, a later case, Paros, which seems to say, well, maybe he doesn't need to say it when he's stating his reasons, but he at least needs to engage when the arguments are being made and show that he's appreciating them. Do we have that here? No. It was just a kind of speech. You have a long speech by defense counsel, speech by Mr. Gonzales, speech by the prosecutor, and the judge basically just saying, I'm considering the 3553 factors. The only individual thing he mentions regarding the history and characteristics of Mr. Gonzales is some minor matters and doesn't even acknowledge any of the mitigating facts. A couple points on the extrinsic evidence. The government has argued that the declaration needed to reference that it was an experiment or they actually used some outside source. Under Navarro-Garcia, that's absolutely incorrect. Navarro-Garcia essentially holds if it's unclear from the declaration, then you need the hearing. Regarding whether the district court's alternative holding, first of all, the proper standard is the government bears the burden of proving beyond a reasonable doubt that the extrinsic evidence could not have affected the verdict. The district court here did not acknowledge once beyond a reasonable doubt standard, so relying on that holding, I think, would be error. The last point I'd like to make is the name on the phone, that it was Michelle and not my client, not Mr. Gonzales' name or any connection to Mr. Gonzales, is significant. And the government knew this was significant in their closing argument. And I'm referring to excerpt of record, page 111. Are drug traffickers going to identify exactly who owns the phone so if law enforcement finds it, they can go down to that house and arrest them? Of course not. The phone is going to be as vague as possible. The phone is going to have as little identification as possible because the purpose of the phone is simply to get that car through the border and nothing more. The government knew it had a problem with the name Michelle on it, and they tried to counter that at closing. It was important. That I'll submit. Thank you, counsel. Thank you both. This argument will be submitted. Court will stand in recess for the day.
judges: Reinhardt, Berzon, Miner